FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 25, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NIKKILEE T.,<br><br>            Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | NO: 1:17-CV-3139-RMP<br><br>ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Nikkilee T.,[1] **ECF No. 13**, and the Commissioner of Social Security (the "Commissioner"), **ECF No. 14**. Nikkilee sought judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of her claim for supplemental security income. ECF No. 1-1; *see also* 42 U.S.C. § 1383(c)(3).

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

The Court has reviewed the motions, Plaintiff's reply, the administrative record, and is fully informed. For the reasons stated below, the Commissioner's motion, ECF No. 14, is granted, and Plaintiff's motion, ECF No. 13, is denied, resulting in a denial of benefits.

## BACKGROUND

**A. Plaintiff's Claim for Benefits**

Plaintiff is a 29-year-old woman who completed tenth grade and claims that she became disabled when she was 20 years old, on June 30, 2008. Administrative Record ("AR") 205.[2] Plaintiff filed an application for supplemental security income ("SSI") on October 5, 2009, claiming disability on the basis of post-traumatic stress disorder ("PTSD"), panic attacks, thyroid problems, back pain, bilateral knee pain, bilateral bunions, hearing loss, polycystic kidney disease, and a history of seizures not reported to her primary care provider. *See* AR 86.

By November 2013, Nikkilee claimed that the following conditions were disabling: "more severe PTSD [than when she initially applied for "SSI"], back pain, thyroid knee pain, bunyons [sic], hearing loss, panic attacks, and kidney complications[.]" AR 87. Plaintiff claimed that she "cannot climb stairs, cannot walk more than the distance of two blocks, and now experiences panic and anxiety attacks both alone and with others[.]" *Id*.

---

[2] The AR is filed at ECF No. 9.

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

**B. January 5, 2016 Hearing**

Nikkilee was represented by Shane Smith[3] at her hearing before Administrative Law Judge ("ALJ") Kimberly Boyce on January 5, 2016, in Yakima, Washington. Nikkilee responded to questions from her attorney and Judge Boyce. Subsequently, vocational expert ("VE") Paul Prachyl, responded to questions from Nikkilee's attorney and the ALJ.

Plaintiff testified that she lived with her boyfriend and his three children, ages seven through twelve. AR 53. Nikkilee stated that she was pregnant with another child, due approximately three months after the hearing. AR 54. At the time of the hearing, Nikkilee's two biological children were living with other relatives. AR 53. Nikkilee represented that her boyfriend worked from 2:30 a.m. until "sometimes" 6:00 or 7:00 p.m. AR 54. While he was at work, she took care of the children "to the best of [her] ability[,]" further explaining that she tried to help them with homework, made sure that they got their showers, and had clean clothes for school. *Id*. Nikkilee represented that the children prepared their own food and, on the day of the hearing, she received help from one of the children putting Nikkilee's hair up because of her limited shoulder mobility. AR 55–56.

As for social interactions, Nikkilee testified that she had received a ride to the hearing from a friend whom she had known for approximately eight years but that

---

[3] Attorney D. James Tree represents Plaintiff on appeal.

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

the only friend with whom she regularly spent time was her best friend of approximately nine years. AR 52. Nikkilee explained that she had stopped driving approximately three months before the hearing, after she received a ticket for driving without a license. AR 58–59.

On the subject of paid work, Nikkilee testified that she last worked in 2010, at Salvation Army for one day. AR 59. Nikkilee recalled that she quit after she clashed with her supervisor when Nikkilee raised the issue of her back pain. AR 60. Nikkilee further recounted that she had left quite a few jobs after "[going] off on employers and [telling] them that [s]he's not going to do what they want [her] to, and if they think they can do it better, then they can do it themselves[.]" AR 63. Nikkilee explained that she was working with a therapist, most recently approximately one month before the hearing, to address her anger issues, anxiety, and PTSD from a lengthy history of abuse in childhood. AR 61–63.

The ALJ asked VE Mr. Prachyl to consider a hypothetical individual of Plaintiff's age and education, with no relevant work history, who: is limited to medium work except can occasionally climb; can understand, remember, and carry out unskilled, routine, and repetitive work that can be learned by demonstration and in which tasks to be performed are pre-determined by the employer; can cope with occasional work setting change and occasional interaction with supervisors; can work in proximity to coworkers but not in a team or cooperative effort; can perform work that does not require interaction with the general public as an essential element

of the job but occasional incidental contact with the general public is not precluded. AR 69–70. The VE responded that an individual as the ALJ described could work as an industrial cleaner, hospital cleaner, housekeeping cleaner, and final assembler. AR 70–72. The VE further testified that employers, on average, tolerate approximately one day of absence from work per month and do not tolerate responses from employees that are hostile or insubordinate. AR 72.

### C. ALJ's Decision

On March 9, 2016, the ALJ issued an unfavorable decision. AR 20–31. Applying the five-step evaluation process, Judge Boyce found:

**Step one:** Nikkilee has not engaged in substantial gainful activity since the application date, October 5, 2009.

**Step two:** Nikkilee has the following severe impairments: thyroid disorder; nephrotic syndrome/polycystic renal disease; hearing loss; depression; anxiety disorders variously diagnosed as anxiety, PTSD, and panic; and a personality disorder. The ALJ characterized the following as "nonsevere impairments" that had no significant functional impact for any twelve-month period or, alternatively, claimed impairments that were not medically determinable: mild scoliosis; kidney stones; vertigo; hematuria; back pain; shoulder impairment; seizure impairment; and knee impairment.

**Step three:** Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Residual Functional Capacity ("RFC"):** The ALJ found that Nikkilee has the RFC:

> To perform medium work as defined in 20 CFR 416.967(c). She can occasionally climb. She can perform work in which concentrated exposure to extreme cold and/or heat is not present. She can perform work in which loud noise is not present. In order to meet ordinary and reasonable employer expectations regarding attendance, production and work place behavior, she can understand, remember, and carry out unskilled routine, and repetitive work that can be learned by demonstration, and in which tasks to be performed are predetermined by the employer. She can cope with occasional work setting change and occasional interaction with supervisors. She can work in proximity to coworkers, but not in a team or cooperative effort. She can perform work that does not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public is not precluded.

AR 25.

The ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms." AR 25. However, the ALJ further found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible" for reasons that the ALJ went on to articulate, foremost among them that "the medical evidence does not substantiate claimant's allegations of disabling limitations." AR 25–26. The ALJ concluded that Plaintiff's mental health issues support a functional

limitation "to unskilled work with limited public contact," but not a finding of complete disability. AR 27. With respect to Plaintiff's mental health issues combined with her physical maladies, the ALJ agreed with the state consultative examiner's assessment, which found that Plaintiff's self-reported activities of daily living did not support the severity of impairment that Plaintiff claimed. *See* AR 28, 93.

**Step four:** Nikkilee does not have past relevant work, so transferability of job skills is not an issue, and she is able to perform jobs that exist in significant numbers in the national economy that are compatible with her age, education, work experience, and residual functional capacity.

**Step five:** Nikkilee was not disabled for purposes of the Social Security Act since October 5, 2009, the date that the application was filed.

## APPLICABLE LEGAL STANDARDS

**A. Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).

Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

### B. Definition of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a benefits claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### C. Sequential Process

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically

severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform past work, in the fifth and final step in the process the decision maker determines whether the claimant is able to perform other work in the national economy in view of her residual functional capacity and age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

Plaintiff raises the following issues regarding the ALJ's decision:

1. Whether the ALJ's residual functional capacity assessment failed to incorporate all of the functional limitations identified by the evaluating and reviewing psychologists whose opinions were given significant weight?

2. Whether the ALJ erroneously rejected the opinions of Plaintiff's treating counselor?

3. Whether the ALJ erroneously rejected Plaintiff's allegations of disabling mental limitations for reasons that are not specific, clear, and convincing?

## DISCUSSION

### *Assessment of residual functional capacity*

Plaintiff maintains that the ALJ's RFC was inconsistent with the opinions of Emma Joan Billings, Ph.D., and James Bailey, Ph.D., the assessments of whom

Judge Boyce gave "significant weight." ECF No. 15; *see also* AR 28. Plaintiff argues that the opinions of Drs. Billings and Bailey support that Plaintiff's residual mental functional capacity is more limited than the ALJ determined because "due to an underlying personality disorder, [Plaintiff] is likely to respond to direction by a supervisor in an inappropriate manner." ECF No. 15 at 11. The Commissioner responds that the ALJ's RFC determinations are consistent with the consultative assessments in the record.

**Emma Joan Billings, Ph.D.**

Dr. Billings completed a psychological assessment of Nikkilee in April 2014. The Commissioner asserts that Dr. Billings did not identify any specific functional limitations and instead offered vague impressions of how Plaintiff's personality characteristics might affect her success in a work environment.

Specifically, Dr. Billings opined:

> Nikkilee exhibits personality characteristics that appeared to impact her social interactions and employment. These mixed characteristics include easy irritability, refusing to take directions, and multiple failed relationships. She also reports symptoms of depression and anxiety which meets criteria for their relative diagnosis. She is likely to continue to have problems in employment settings because of her social difficulties.

AR 418.

Nikkilee assigns error to the ALJ's RFC for failing to account for Nikkilee's tendency to be "uncooperative/belligerent at times," an impression articulated by Dr. Billings to which the ALJ gave significant weight. ECF No. 13 at 11; AR 28.

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

Plaintiff contends that "[a]dressing only the frequency with which [Nikkilee] can interact with others does nothing to address the problematic nature of [Nikkilee's] interpersonal style."  ECF No. 13 at 12.

However, Dr. Billings' report does not explicitly state, nor even imply, a conclusion that Nikkilee is disabled by a personality disorder or that a more restrictive functional limitation is justified because her problematic behavior is beyond her control.  Therefore, there are no conclusions that the ALJ would have needed to provide clear and convincing reasons to reject.  *See Turner v. Commissioner*, 613 F.3d 1217, 1223 (9th Cir. 2010).  Moreover, the ALJ incorporated Dr. Billings' impressions of Plaintiff into the RFC that she formulated.  The Court finds no error regarding the treatment of Dr. Billings' consultative assessment in determining Plaintiff's RFC.

### James Bailey, Ph.D.

State agency consulting psychologist Dr. Bailey also evaluated Plaintiff in April 2014.   Dr. Bailey concluded that Plaintiff "is able to sustain brief/superficial interactions with the general public, coworkers, and [supervisors]."  AR 97. Dr. Bailey also found that Plaintiff was "not significantly limited" in many areas relating to work, including "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  AR 96.  Dr. Bailey found Plaintiff "moderately limited" in her "ability to accept instructions and

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

respond appropriately to criticism from supervisors." *Id.* Plaintiff argues that the ALJ's determination that Plaintiff is capable of "occasional" interaction with supervisors materially differs from an ability to "briefly" or "superficially" interact with supervisors because "occasional" means occurring up to one third of the time under SSR 96-9p. ECF No. 13 at 13.

In the Social Security context, "occasionally" refers to an activity that occurs "from very little up to one-third of the time." SSR No. 83-10. An RFC "is the most [an individual] can still do despite [her] limitations" and is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). There is no apparent inconsistency between the ALJ's determination that the most that Plaintiff could do by way of interaction with a supervisor or other individuals in the workplace is to interact with them "very little up to one-third" of the time and Dr. Bailey's conclusions. *See Shaibi v. Berryhill*, 870 F.3d 874, 879 (9th Cir. 2017) (affirming an RFC that found claimant capable of "occasional interaction" with coworkers notwithstanding a medical opinion that claimant was "moderately limited" in her ability to interact). Therefore, the Court finds no error on this basis.

### *Treatment of opinions of Plaintiff's treating counselor*

Plaintiff argues that the ALJ erroneously rejected the opinion of Plaintiff's treating social worker M. Gabriela Mondragon, MSW, that Plaintiff was able to "work, look for work, or prepare for work" for less than forty hours per week due to

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

PTSD and depression. ECF No. 15 at 7–8 (citing AR 506 (opining Plaintiff was limited to 1-10 hours per week in 2013) and 525 (opining Plaintiff was limited to 11-20 hours per week in 2014)). The Commissioner responds that the ALJ appropriately discounted Ms. Mondragon's opinions because the social worker had not identified any concrete limitations and instead offered "vague suggestions that [Nikkilee's] impairments might impact her work to an unspecified degree." ECF No. 14 at 11. Moreover, the Commissioner continues, even if the Court interprets Ms. Mondragon's opinions as concrete limitations, the ALJ either accounted for them or provided sufficient grounds for disregarding them based on their inconsistency with other evidence. ECF No. 14 at 12–13.

The ALJ assigned little weight to Ms. Mondragon's opinions, as follows:

> To the extent it indicates more restrictive limitations that [sic] set forth in the residual functional capacity, the 2013 and 2014 DSHS assessments of [Ms. Mondragon], relating that the claimant's mental health symptoms may impact her social and cognitive functioning[.]

AR 28. The ALJ found that Ms. Mondragon's opinions, as well as other opinions in the record to which the ALJ assigned little weight, were "inconsistent with the claimant's longitudinal treatment history, the objective clinical findings, and her performance on physical and mental status examinations . . . ." *Id.*

In 2013, Ms. Mondragon opined that Nikkilee's PTSD and depressive disorder, and the way they manifest themselves in Nikkilee's daily activities,

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

support limiting Nikkilee's participating in work, a search for work, or preparing to work to one-to-ten hours per week. AR 506. Without articulating any changed circumstances, in 2014 Ms. Mondragon increased the hours she thought Nikkilee would be able to work, search for work, or prepare for work to eleven-to-twenty hours per week. AR 525. Ms. Mondragon does not justify those particular time restrictions in either report. Rather, Ms. Mondragon noted that Nikkilee was not "successful at consistent attendance" for her weekly trauma therapy. AR 507. In addition, in both 2013 and 2014, Ms. Mondragon indicated that Nikkilee's conditions do not affect her ability to access services and are not permanent. AR 507, 526.

The reasons that the ALJ gave for giving less weight to the opinions of Ms. Mondragon, who is not an acceptable medical source, are germane and reflect a synthesis of the record of the whole in this matter. Moreover, the Court finds that the social limitations that the ALJ included in Nikkilee's RFC are consistent with the specific limitations that Ms. Mondragon articulated. The ALJ did not err in her treatment of the documentation completed by Ms. Mondragon.

### *Treatment of Plaintiff's allegations of disabling mental limitations*

Plaintiff argues that the ALJ did not provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony. Plaintiff continues that the ALJ

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

erroneously relies on Dr. Billings' opinion to support that Plaintiff's mental limitations are not disabling is misplaced because, as discussed above, Plaintiff argues that "fully crediting all the limitations identified by Dr. Billings leads to a finding of disability." ECF No. 13 at 17. By contrast, the Commissioner argues that the ALJ provided numerous clear and convincing reasons for finding that Plaintiff's statements concerning the limiting effects of her symptoms were not entirely credible. ECF No. 14 at 14–15.

An ALJ evaluating the severity of a claimant's symptoms may consider: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). In finding that the claimant's testimony as to the severity of her impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Commissioner*, 169 F.3d 595, 601–02 (9th Cir. 1999). A negative credibility finding must be supported by "specific, clear and convincing" reasons when there is no evidence of malingering. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). An ALJ does not need to base an adverse credibility finding on clear and convincing reasons if the record

contains affirmative evidence suggesting that the claimant is malingering. *Carmickle v. Commissioner*, 533 F.3d 115, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996).

The ALJ gave germane reasons supported by the record for discrediting Plaintiff's claim that her shoulder pain prevents her from working. AR 29. Plaintiff herself testified during the hearing that she declined the recommendation of her treatment provider to wear an arm sling and, previously, had refused to seek medical attention because "doctors don't listen to what I'm telling them." AR 60. The treatment records relating to Plaintiff's claimed shoulder injury reflect that Plaintiff was "recalcitrant," demonstrated an exaggerated pain response, would not accept the nurse practitioner's explanation of why a shoulder immobilizer would not work and a sling was appropriate, and "would not participate in exam or move her shoulder[.]" AR 849–52.

The ALJ further articulated specific reasons for discrediting Plaintiff's allegations relating to the nature, severity, and effect of her psychological impairments. For instance, the ALJ permissibly inferred from Plaintiff's failure to follow up with mental health treatment that her mental health symptoms were not as disabling at Plaintiff claimed. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Indeed, the record is replete with treatment providers' appointment notes indicating instances in which Plaintiff either did not follow up with recommended treatment or monitoring or otherwise neglected to pursue opportunities to improve

her mental or physical state. In March 2013, Plaintiff's mental health care provider noted that Plaintiff had "not been successful with consistent attendance" for trauma therapy. AR 507–08. Plaintiff again repeatedly failed to show up for appointments and left treatment entirely from fall 2014 until late August 2015, seeing her provider less than once per month, on average, even while participating in treatment. AR 924–36.

The ALJ also discussed at length Plaintiff's activities of daily living. The ALJ observed that "[t]he evidence also indicates a situational or environmental component to the claimant's problems," meaning that factors other than the severity of Plaintiff's mental health symptoms had limited her functionality in a number of key instances. Specifically, the ALJ noted that Plaintiff had missed an appointment in 2013 because she had been awake with her daughter the night before; she quit one of her jobs because she was not being paid; she could not work in the field of childcare because of a prior conviction; she could not socialize more with her best friend because of conflicting or busy schedules; and she had recently ceased driving because she had received a ticket for driving without a license.

The evidence referred to by the ALJ undermines the credibility of Plaintiff's assertions regarding the effect or severity of her symptoms; the ALJ's reasoning also supports that she did not arbitrarily discredit Plaintiff's allegations. Even when the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

the record. *Tommasetti*, 533 F.3d at 1038 (9th Cir. 2008). The Court does not find reversible error on this ground. Therefore, the Court need not reach the issue of whether Plaintiff's testimony should be credited as true on appeal.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. Judgment shall be entered for Defendant.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter Judgment as directed, provide copies to counsel, and **close this case**.

**DATED** May 25, 2018.

                                *s/ Rosanna Malouf Peterson*
                                ROSANNA MALOUF PETERSON
                                  United States District Judge